## A01A0887. McLEOD v. THE STATE.
### (554 SE2d 507)

ELLINGTON, Judge.

Maureen McLeod entered a plea of nolo contendere to one count of improperly stopping her car, OCGA § 40-6-123 (c). Proceeding pro se, McLeod appeals, contending the trial court failed to advise her that a plea could have an impact on her immigration status, as required by OCGA § 17-7-93 (c), and that the trial court imposed an overly severe sentence.[1] For the reasons which follow, we affirm.

McLeod's vehicle was rear-ended by a vehicle driven by Eric Albert Tillman. McLeod was charged with reckless driving, OCGA § 40-6-390; Tillman was charged with following too closely, OCGA § 40-6-49. After a hearing, Tillman entered a nolo plea, and the trial court suspended the fine. McLeod entered a nolo plea to improper stopping; the trial court sentenced her to 60 days in jail, suspended on completion of defensive driving school, and fined her $300 plus court costs.

1. McLeod contends the trial court violated OCGA § 17-7-93 (c) which provides:

> In addition to any other inquiry by the court prior to acceptance of a plea of guilty, the court shall determine whether the defendant is freely entering the plea with an understanding that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status. This subsection shall apply with respect to acceptance of any plea of guilty to any state offense in any court of this state or any political subdivision of this state.

As a preliminary matter, we conclude this Code section applies when a defendant pleads nolo contendere. *Williams v. State*, 174 Ga. App. 506 (330 SE2d 435) (1985) (a plea of nolo contendere was intended to stand upon the same footing as a guilty plea in all respects except where otherwise specifically provided); *State v. Kight*, 175 Ga. App. 65-66 (1) (332 SE2d 363) (1985) (applying OCGA § 17-7-93 (b) in the context of a plea of nolo contendere). See Uniform Superior Court Rules 33.1 (B) ("Procedurally, a plea of nolo contendere should be handled under these rules in a manner similar to a plea of guilty.");

---

[1] We note that in the State's brief the prosecutor informs this Court that the State does not object to the withdrawal of McLeod's nolo plea. Indeed, the State affirmatively requests this Court to remand this case with instructions that the trial court declare the plea void, ab initio, and grant McLeod a trial. A remand for this purpose would be useless, however, because more than 180 days have passed since McLeod's misdemeanor conviction of traffic laws became final, and Georgia law therefore forbids any new challenge to the conviction. OCGA § 40-13-33; see *Grant v. State*, 231 Ga. App. 868 (501 SE2d 27) (1998).

33.7 ("The judge shall not accept a plea of guilty or nolo contendere without first determining, on the record, that the plea is voluntary."); 33.8 (C) (2) ("The judge should not accept a plea of guilty or nolo contendere from a defendant without first . . . [i]nforming the defendant on the record . . . that a plea of guilty may have an impact on his or her immigration status if the defendant is not a citizen of the United States.").

McLeod seeks to set aside her nolo plea because the trial court "did not inform [her] of any possible implications on her immigration status by entering a plea." OCGA § 17-7-93 (c), however, does not require the trial court to recite formulaic advice to a defendant, but rather requires the trial court to "determine" that the defendant is entering the plea "with an understanding that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status." Here, the record as a whole indisputably shows that McLeod realized a plea could have an effect on her immigration status. At the hearing, McLeod's attorney objected to the imposition of probation because "the probation . . . could serve as an impediment to . . . her ability to apply for U. S. citizenship which has been ongoing." Indeed, the attorney told the court that a previous plea and probated sentence had interfered with earlier immigration proceedings. Therefore, the face of the record shows that the trial court complied with OCGA § 17-7-93 (c).

Furthermore, OCGA § 17-7-93 (c) is the only source of a requirement that a defendant be advised of the possible effect of a plea on immigration status. *Palacios v. State*, 250 Ga. App. 794, 795 (554 SE2d 498) (2001). A resident alien's guilty plea is not rendered involuntary by the fact that she was unaware that she might be deported because the effect of the plea on her immigration status is deemed a "collateral consequence" of the plea. Id. A guilty plea will not be set aside because the defendant is not advised of possible collateral consequences of her guilty plea. *Williams v. Duffy*, 270 Ga. 580, 581 (1) (513 SE2d 212) (1999).[2]

We take this opportunity to emphasize that the language of OCGA § 17-7-93 (c) does not limit the trial court's duty to those cases in which the trial court is aware of a defendant's immigration status. Because a person's citizenship may not be apparent, we urge all

---

[2] By comparison, a guilty plea entered in ignorance of the constitutional rights waived thereby is invalid and subject to reversal under *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), and its progeny. *Warner v. State*, 214 Ga. App. 343-344 (447 SE2d 692) (1994). Even regarding rights of a constitutional magnitude, however, a guilty plea will not be set aside where the record as a whole demonstrates, as it does here, that the defendant understood the rights she was waiving and the possible consequences of her plea. *Raley v. State*, 241 Ga. App. 713, 714 (1) (527 SE2d 590) (2000); *King v. State*, 215 Ga. App. 139, 140 (1) (449 SE2d 870) (1994).

courts accepting pleas of guilty or nolo contendere to any state offenses to include this disclosure as a matter of routine. See USCR 33.7; 33.8.

2. In three related enumerations, McLeod contends the trial court punished her too severely.

"There is a presumption that a sentence was correctly imposed, and the burden of showing that a sentence was not correctly imposed is with the party asserting its impropriety." (Citation omitted.) *Palmore v. State*, 236 Ga. App. 285 (511 SE2d 624) (1999). "Unless a sentence is so overly severe or excessive in proportion to the offense as to shock the conscience, a legislatively authorized punishment does not ordinarily exceed" the Eighth Amendment prohibition of cruel and unusual punishment, which includes arbitrary and disproportionate sentences. *Small v. State*, 243 Ga. App. 678, 680 (3) (534 SE2d 139) (2000). Where a trial court abuses its discretion and imposes a sentence which is overly severe and disproportionate in a specific case, the sentence exceeds constitutional limits. Id.

McLeod contends the trial court informed her "that it would be punishing her for her holding out for a jury trial." But McLeod failed to cite any evidence in the record or transcript that the trial court punished her "for exercising her constitutional right to a jury trial" by initially pleading not guilty.[3] Accordingly, this Court will not consider this enumeration. Court of Appeals Rule 27 (c) (3) (i).

McLeod also contends that the sentence the trial court imposed was disproportionate to the charge and that it was disproportionate to the sentence given to Tillman.[4] First, the sentence imposed fell within the allowed sentencing range. OCGA §§ 17-10-3; 40-6-1; 40-13-60. Georgia law does not require courts to treat equally both drivers cited for an accident. See Daniel, Ga. Criminal Trial Practice (1999 ed.), § 26-4, pp. 794-795. Furthermore, in this case there was a factual basis for the severity of McLeod's punishment and the disparate treatment as between the two drivers. Specifically, McLeod had several previous convictions for moving violations. More importantly, the trial court heard evidence that McLeod intentionally braked in front of Tillman's vehicle in retaliation for an earlier incident in which McLeod had been unable to pass Tillman. During McLeod's sentencing, the trial court told her that the "very aggravating" factual basis for her plea resulted in the harsher sentence. See Daniel,

---

[3] Indeed, the record suggests that the trial court *rejected* the prosecutor's argument that McLeod's delay in pleading guilty had caused "additional prosecutorial expense."

[4] Although not set out in an enumeration of error, McLeod raises the specter of "racial animus," implying that the trial court favored Tillman, who is white, over McLeod, who is black. Again, McLeod failed to support this assertion, and we do not address it.

Ga. Criminal Trial Practice (1999 ed.), § 26-31, pp. 853-856. The trial court did not abuse its discretion in sentencing McLeod.

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 24, 2001.

Maureen M. McLeod, *pro se.*
*Steven L. Harris, Solicitor-General,* for appellee.